UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASENATH JONES,

      Plaintiff,

v.

                                    Case No. 23-cv-11688
                                    HON. MARK A. GOLDSMITH

EASTPOINTE COMMUNITY SCHOOLS,
et al.,

      Defendants.

_____/

**OPINION & ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 58) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 59)**

Before the Court are the parties' cross-motions for summary judgment.  (Dkts. 58, 59).[1]

After resigning from her position as principal of Eastpointe High School, Plaintiff Asenath Jones

filed this lawsuit alleging federal claims of race discrimination, retaliation, hostile work

environment, and constructive discharge, as well as First Amendment retaliation claims.  See Am.

Compl. (Dkt. 34).  She also alleges various state law claims.  Id.[2]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to the motion, the briefing includes Jones's response to Defendants' motion (Dkt. 64) and Defendants' reply (Dkt. 67), Defendants' response to Jones's motion (Dkt. 62), and Jones's reply (Dkt. 68).

[2] Jones's state law claims include: (i) race discrimination, retaliation, hostile work environment, and constructive discharge under the Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 et seq (Count III); (ii) conversion in violation of Mich. Comp. Laws § 600.2919a (Count IV); (iii) violation of the Michigan Public Employment Relations Act, Mich. Comp. Laws § 423.210 (Count VI); (iv) breach of contract (Count VII); (v) violation of Michigan Revised School Code, Mich. Comp. Laws § 380.1229 (Count VIII); (vi) negligent misrepresentation (Count IX); (vii) innocent misrepresentation (Count X); (viii) unjust enrichment (Count XI); (ix) silent fraud (Count XII); (x) defamation (Count XIII); and (xi) defamation by implication (Count XIV).

Defendants Eastpointe Community Schools (ECS) and Christina Gibson seek summary judgment as to all of Jones's claims against them.  See Def. Mot.  Jones moves for summary judgment on her federal claims of race discrimination, retaliation, hostile work environment, constructive discharge, First Amendment retaliation, and related claims under Michigan law.  See Pl. Mot.

For the reasons discussed below, the Court denies Jones's motion in full and grants Eastpointe's motion as to the federal claims.  As no federal claims remain, the Court dismisses the remaining state-law claims without prejudice.

## I. BACKGROUND

Jones, a black woman, began her employment with ECS in August 2021 as assistant principal of Eastpointe High School.  Am. Compl. ¶ 12.  Jones served as "acting principal" beginning January 2022 and then as principal from fall 2022 through her resignation in May 2023.  Jones Dep. PageID.1798 (Dkt. 58-2).

### A.  Race Discrimination—Disparate Treatment and Hostile Work Environment Facts

Jones's race discrimination and hostile work environment claims are based on certain alleged incidents at ECS.

At a district meeting in fall 2022, Gibson—superintendent of ECS and a white woman— asked some black principals, who were seated together, to spread out and sit with others.  Am. Compl. ¶¶ 7, 15.  Gibson stated that she noticed the black and white principals were seated separately and asked the group of black individuals (including Jones) who were all sitting at a table together to take seat next to others around the room, so that there would "be a mix of opinion and different perspectives."  Gibson Dep. PageID.2483–2484 (Dkt. 59-6); Gibson Aff. at PageID.2027 (Dkt. 58-3).

Jones also points to a conversation she had with Gibson and Stephanie Fleming, assistant superintendent and HR manager for ECS upon returning from a January 2023 Martin Luther King Jr. (MLK) Day conference on Diversity, Equity, and Inclusion (DEI).  Am. Compl. ¶ 16.  Jones alleges that Gibson made the snide remark, "how did that go with your people."  Jones Dep. PageID.1923.  Gibson did not recall making that remark.  Gibson Dep. PageID.2486.

Jones also alleges that Gibson used the "n" word in her presence in March 2022.  Am. Compl. ¶ 13.  Jones asserts that following an interview with a prospective assistant principal candidate (a black man), Gibson used the "n" word in reference to the candidate, stating "[w]ait until the students get a look at that n*****."  Id.  Gibson does not deny that she used the word, though she asserts that she did not use it in the context in which Jones alleges.  Gibson Aff. at PageID.2026.  Gibson denies calling a prospective hire the "n" word and clarified that she mentioned the term after hearing it used by a group of students and explained to Jones that she "did not understand why it is appropriate for young gentlemen to be using that word [] in the front of the school."  Id.

In an email correspondence dated March 22, 2023, Gibson wrote that "the 'us and them' division between building and district administrators is [] counterproductive to our mission."  Gibson Email at PageID.2574 (Dkt. 59-8).  Jones asserts "us and them" statement refers division between the black building administration and the white district administration.  Jones Dep. at PageID.1941.  Gibson contends that the statement was about the high school being its own entity.  Gibson Dep. PageID.2493–2494.  Gibson explained that the "administrative team of Jones, Eric Ceresa, Fatima Thompson, and Dean Tabia Tabb [] demonstrated a desire to run the [] high school [] in isolation of larger district work."  Gibson Aff. at PageID.2027.  Gibson explained, "[t]he district cannot improve in the presence of such an antagonistic mindset; the district can only

improve if everyone works together . . . [t]his is what I was referring to when saying we cannot have an 'us versus them' mentality.  I was trying to build a team." Id. at PageID.2027–2028.  The statement "wasn't about race[;] [i]t was about leadership acumen."  Gibson Dep. PageID.2493–2494.

Additionally, Jones asserts that she endured other racially hostile utterances and incidents, including an occasion where Gibson allegedly told Jones that "as a black woman you have to be a bitch to get the job done."  Jones Dep. PageID.1892.  Gibson noted that the comment was meant to address women in leadership in general and the challenges women in leadership face.  Gibson Aff. at PageID.2028–2029.

### B.  Jones's Resignation and Constructive Discharge Claims Facts

Defendants allege that, while principal, Jones had various performance issues:

- "Jones was not aware that her administrative team had cancelled a day of school, altering the required number of days and clock hours, which had to be made up at the end of the school year.  Jones was asked multiple times to follow the process related to the calendar and refused."  Gibson Aff. at PageID.2019–2020.

- Jones and members of her team submitted a memo which showed Jones's misunderstanding of fundraising and use of general fund dollars for Career Technical Education programs. Id. at PageID.2021.  The memo showed that she overspent on coaching—a coach was hired as a mentor and coach for teachers. Id.  After Jones was instructed to stop using the coach beyond the allocated time, the coach still reported to work weekly. Id.

- Jones would often be late or fail to attend weekly scheduled meetings with Gibson. Id. at PageID.2021–2022.  Jones also failed to attend meetings with and to implement suggested strategies from Donna Anderson. Id.  Anderson was hired to mentor and support Jones, among others. Id.

- Jones failed, in a timely matter, to begin investigations into alleged mishandling of funds by the athletics department. Id. at PageID.2022.  She only began her investigation after she was directed to do so by Fleming. Id.

4

Given these performance issues, Gibson recommended, at an ECS Board meeting on March 30, 2023, that the Board consider not renewing Jones and Assistant Principal Eric Ceresa's administrative support contracts due to "failure to properly address and handle student and personnel matters, failure to comply with Board policies and administrative processes, and failure to conduct staff evaluations."  Id.; see also Board Resolution at PageID.2032 (Dkt. 58-4).  The Board did not vote on whether to renew Jones's contract at the March 30th meeting.  Gibson Aff. at PageID.2022.   The next day Jones found out about the resolution from Ceresa.  Jones Dep. at PageID.1926–1927.

Gibson sent Jones a letter on April 10, 2023 stating that she would be recommending to the Board that Jones's contract not be renewed.  Gibson Aff. at PageID.2023; 4/10/23 Ltr. PageID.2034 (Dkt. 58-5).  Before the Board meeting where Gibson had planned to recommend nonrenewal, Jones emailed Gibson the following letter of resignation dated May 3, 2023:

> Please allow this notice to serve as my intent to resign as the Principal of Eastpointe High School effective July 31, 2023, at the end of my current contract year.  The transition meeting is already set for Tuesday, May 9, 2023 to discuss the details per our conversation on May 3, 2023.

Jones Resignation Ltr. at PageID.2036 (Dkt. 58-6); see also Gibson Aff. at PageID.2024.

After sending Gibson her resignation letter, Jones attended a public Board meeting on May 8, 2023 and made public statements regarding her consideration for nonrenewal.  Gibson Aff. at PageID.2025.  Gibson alleged that Jones's behavior and comments indicated to district leadership that she would be unable to properly fulfill her responsibilities as principal through the end of the school year.  The Board placed Jones on paid administrative leave the next day, effective May 9, 2023, and paid her through the expiration of her contract.  Id.

**C. Retaliation Facts**

Jones's amended complaint also includes allegations of retaliation for her filing complaints with HR, asking for meetings to address racism, and seeking DEI training.  Am. Compl. ¶¶ 77, 194.  Sometime in January 2023, Jones complained about discrimination to ECS via an email to Fleming requesting diversity training.  Jones Dep. PageID.1776–1777, 1901–1903, 1938.  The request resulted in a meeting with Jones, Fleming, and Heather Agueros (the president of the Eastpointe Administrators Union).  Jones Dep. PageID.1776–1777.  Then, in February of 2023, Jones made two more complaints about "microaggressions" she witnessed.  Am. Compl. ¶ 22; Jones Dep. at PageID.1901–1904.  Jones explained that these microaggressions included Gibson telling her: (i) she "needed to be a bitch as a black woman;" (ii) "black people get to change their hair;" (iii) "we don't need a pool; black kids don't swim;" and (iv) telling a parent to discipline her black daughter by "taking away her braids and nails."  Jones Dep. at PageID.1901–1904.

Gibson confirmed that Stephanie Fleming issued Jones two written disciplines, in January 2023 and April 2023, and verbal discipline in March 2023.  Gibson Aff. at PageID.2029.  Prior to making complaints of racism, Jones had no disciplinary record at ECS, but after her complaints, was she written up on multiple occasions.  Jones Dep. at PageID.1795, 1883.

## II. ANALYSIS[3]

### A. Race Discrimination, Retaliation, Hostile Work Environment, and Constructive Discharge Claims

#### 1. Hostile Work Environment (Counts I, II, and XV)

---

[3] The Court applies the traditional summary judgment standard as articulated in <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by coming forward with evidence showing there is a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324–325 (1986).

Jones brings hostile work environment claims against Defendants under § 1981, § 1983, and Title VII of the Civil Rights Act of 1964.  The Sixth Circuit reviews § 1981, § 1983, and Title VII discrimination claims under the same standard.  See, e.g., Boxill v. O'Grady, 935 F.3d 510, 520 (6th Cir. 2019) (stating that the Title VII standard is the same for § 1983 claims); Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999) (stating that the Title VII standard is the same for § 1981 claims).  A plaintiff may bring a discrimination claim based on a racially hostile work environment under Title VII.  Jackson, 191 F.3d at 658.

To prevail in a hostile work environment based on race under Title VII, a plaintiff must show that "(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act."  Williams v. CSX Transp. Co., 643 F.3d 502, 511 (6th Cir. 2011).

Defendants contend that the alleged events underlying Jones's claims are too isolated to rise to the level of a severe or pervasive abusive work environment.  Def. Mot. at PageID.1706–1708.  Whether an environment is hostile or abusive can only be determined by evaluating the totality of the circumstances.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  In making this determination, the Court can consider the (i) frequency and severity of the discriminatory acts, (ii) whether there were physical threats or humiliation versus offensive utterances, and (iii) whether such conduct unreasonably interfered with the employee's work performance.  Id.

Jones's hostile work environment claim is based on the alleged incidents referenced above. Defendants contend that such allegations constitute occasional verbal utterances and that such

isolated incidents cannot meet the Sixth Circuit's bar for a hostile work environment.  Def. Mot. at PageID.1706–1708.

The Sixth Circuit has set a high bar in defining what actions, taken together, amount to a hostile work environment claim.  Phillips v. UAW Int'l, 854 F.3d 323, 328 (6th Cir. 2017). Further, the Court has noted that "even offensive and bigoted conduct" has been deemed insufficient to clear the bar when it is "neither pervasive nor severe enough to satisfy the claims requirements."  Id.  Whereas regular and ongoing use of racial slurs would constitute a hostile work environment, "sporadic instances of such conduct does not."  Torres v. Cnty. Of Oakland, 758 F.2d 147, 152 (6th Cir. 1985).

Jones and Gibson give very different versions regarding how Gibson used the "n" word. Jones says it was used as a slur about a job candidate; Gibson says it was used to raise a question about how students were using the term.  On summary judgment, the court must adopt the view of the facts that favors the non-moving party, if that view is properly supported.  Scott, 550 U.S. at 378.  Therefore, the Court accepts Jones's version for purposes of this motion.

But that is not enough to forestall summary judgment.  The use of a slur on a one-time basis is not severe or pervasive enough to establish a hostile work environment.  See, e.g., Williams v. AK Steel Corp., No. 18-11485, 2020 WL 2836287, at *12 (E.D. Mich. May 31, 2020) ("Klein's one-time use of the n-word is not severe or pervasive enough to create a hostile work environment."); Diamond v. U.S. Postal Serv., 29 F. App'x 207, 211 (6th Cir. 2002) (holding that one racial slur does not meet the objectively severe requirement for a hostile work environment claim); Williams, 643 F.3d at 513 (affirming the district court's finding of no hostile work environment where defendant called "Jesse Jackson and Al Sharpton 'monkeys' and [stated] that black people should 'go back to where [they] came from'" among other racist utterances); cf.

8

Jackson, 191 F.3d at 660–662, 688 (reversing the district court's judgment as a matter of law for defendant on claims of a racially hostile work environment where plaintiff established persistent racial slurs and graffiti as "conventional conditions on the factory floor"). By contrast, a plaintiff can forestall summary judgment where there are multiple hostile acts. See, e.g., Chancellor v. Coca-Cola Enters., Inc., 675 F. Supp. 2d 771, 790–792 (S.D. Ohio 2009) (finding that a reasonable jury could determine under the totality of the circumstances that Plaintiff was subjected to a racially hostile work environment based on testimony that he was subjected to racial slurs— including references to African-Americans as the "n" word—and insults; he was exposed to racially-hostile graffiti; he learned of racially-hostile incidents involving other employees during the course of his employment; and supervisors treated Caucasian employees more favorably than African-American employees).

The other four alleged acts do not amount to severe or pervasive conduct sufficient to establish a hostile work environment. The allegations set forth by Jones were inappropriate in her view, while Gibson gave each event a non-hostile interpretation or could not recall them happening. However, even accepting Jones's view, they do not represent a pervasive environment. These were five events over a period of about ten months. Caselaw says that that frequency does not qualify as pervasive. See, e.g., Burnett v. Tyco Corp., 203 F.3d 980, 984 (6th Cir. 2000) (holding that three alleged instances spread out at the beginning and end of a six-month period are not sufficiently ongoing or pervasive); Reed v. Proctor & Gamble Mfg. Co., 556 F. App'x 421, 433 (6th Cir. 2014) (finding three instances of alleged harassment, including two in the "offensive utterances" category and one troubling incident where plaintiff's supervisor stood behind him and made a noose out of a telephone cord were not sufficiently severe or perceive to show a hostile work environment).

Because Jones has not shown sufficient evidence of severe or pervasive harassment to constitute an abusive working environment, she has not made a prima facie case for hostile work environment. Accordingly, Defendants are entitled to summary judgment on these claims.

### 2. Constructive Discharge (Counts II and XV)

"To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999). The existence of constructive discharge requires "a determination that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Smith v. Henderson, 376 F.3d 529, 533–534 (6th Cir. 2004) (punctuation modified).

Jones's constructive discharge claim is premised on the existence of a hostile work environment: "[t]he offer of resignation was a form of constructive discharge in light of the hostile work environment and the working conditions that Defendants had created and fostered, which were so untenable and abusive that a reasonable person in Plaintiff's shoes would have felt compelled to resign." Am. Compl. ¶ 37.

Demonstrating a hostile work environment is a requisite element to a hostile-environment constructive discharge case. Penn. State Police v. Sunders, 542 U.S. 129, 149 (2004). In the present case, Jones failed to establish a hostile work environment under Title VII, let alone that Defendants deliberately created intolerable working conditions with the intention of forcing her to quit. Thus, Defendants are entitled to summary judgment on these claims.

### 3. Retaliation (Counts I, II, and XV)

10

To establish a prima facie case of retaliation under Title VII, a plaintiff bears the burden of establishing that: (i) she engaged in protected activity, (ii) her employer knew of the exercise of the protected right, (iii) an adverse employment action was subsequently taken against the employee, and (iv) there was a causal connection between the protected activity and the adverse employment action. Khalaf v. Ford Motor Co., 973 F.3d 469, 488–489 (6th Cir. 2020). Retaliation claims brought under §1981 are governed by the same burden-shifting standards as those under Title VII, so the analysis is the same. Wade v. Knoxville Utilities Bd., 259 F.3d 452, 464 (6th Cir. 2001). Jones has not met this initial burden.

Jones's retaliation claim is premised on two assertions: (i) Gibson requested that the Eastpointe School Board vote for nonrenewal of Jones's employment contract in retaliation for the discrimination complaints Jones had made on behalf of herself and others, Am. Compl. ¶ 29, and (ii) Jones was retaliated against by "bogus pretextual disciplinary write-ups" about her dealings with school staff and administration after making complaints to HR, asking for meetings to address racism, and seeking DEI training. Id. ¶¶ 77, 194.

Eastpointe argues that Jones's alleged retaliatory incidents do not amount to adverse action so she has not established a prima facie case for retaliation. Def. Mot. at PageID.1703–1705. The Court agrees.

Jones argues that she suffered an adverse action when Gibson requested that the Eastpointe School Board vote for nonrenewal of her employment. Pl. Resp. at PageID.2851, 2854. However, the record shows that Gibson never made the formal recommendation for nonrenewal, nor did the Board consider nonrenewal, because Jones resigned before the regular Board meeting set for May 22, 2023 where those items would have been raised. Gibson 4/10/23 Ltr. at PageID.2034; Jones Resignation Ltr. at PageID.2036. See Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir.

11

2004) ("Mere threats of alleged adverse employment action are generally not sufficient to satisfy the adverse action requirement.").

Beyond what is contained in her complaint, Jones does not make arguments or provide additional information related to the adverse action she suffered when she alleges that she was subjected to "bogus pretextual disciplinary write-ups about her dealings with school staff and administration after making complaints to HR, asking for meetings to address racism, and seeking DEI training". Am. Compl. ¶ 194. This allegation alone is insufficient to establish adverse action as "written reprimand without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action." Davis v. Metro Parks & Recreation Dep't, 854 F. App'x 707, 716 (6th Cir. 2021) (punctuation modified). Because Jones has failed to raise a question of fact that she was subjected to an adverse action as a result of her protected activity, she has failed to establish a prima facie case of retaliation. Eastpointe is entitled to summary judgment on these claims.

### 4. Disparate Treatment—Race Discrimination Claims (Counts I, II, and XV)

Jones brings race discrimination claims against Defendants under §1981, §1983; and Title VII. 42 U.S.C §1981 prohibits treating people under contracts differently based on race. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). The discrimination claims brought under these statutes are analyzed under the same evidentiary framework. Thompson v. City of Lansing, 410 F. App'x 922, 934 (6th Cir. 2011). This framework requires a plaintiff to demonstrate: "that (1) he [or she] was a member of a protected class; (2) that he [or she] suffered an adverse employment action; (3) that he [or she] was qualified for the position; and

(4) that a person outside the protected class was treated more favorably than him [or her]." <u>Clay v. United Parcel Serv., Inc.</u>, 501 F.3d 695, 703 (6th Cir. 2007). "The key question is always whether, under the particular facts and context of the case at hand, the Plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." <u>Id.</u>

Defendants argue that Jones cannot satisfy the adverse employment action requirement because her adverse action is based on her constructive discharge. Def. Mot. at PageID.1702. Jones points to several alleged actions to try to satisfy this element. Pl. Resp. at PageID.2851. She alleges that these adverse actions were "fake disciplinary action and unlawful reprimands, disallowing [her] from taking union leadership positions, constructive discharge, and making [her] feel less than human while performing her job with a constant onslaught of racial epitaphs, innuendo, and intimidation." <u>Id.</u>[4]

As discussed above, none of these alleged actions gives rise to adverse action. Because Jones has not established a prima facie case for race discrimination Defendants are entitled to summary judgment on these claims.

## B. <u>First Amendment Retaliation Under 42 U.S.C. §1983 (Count V)</u>

Jones has also brought a First Amendment retaliation claim against Defendants. Am. Compl. ¶¶ 92–97. First Amendment retaliation under § 1983 requires Jones show "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3)

---

[4] Jones does not elaborate anywhere in the record as to her allegation that she was "disallowed" and "advised not to participate" in union leadership activities. She only makes two references to this allegation, one in her amended complaint, ¶ 2, and the other in her response to Defendant's motion. Pl. Resp. at PageID.2851. Neither allegation contains a citation to the record to support this allegation so the Court will not consider it.

the adverse action was motivated at least in part by the plaintiff's protected conduct." Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012).  "Speech is constitutionally protected when it touches on 'a matter of public concern,' which includes speech that can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Boxill, 935 F.3d at 518 (punctuation modified).

Defendants argue that Jones's First Amendment retaliation claim fails for multiple reasons, including the fact that an adverse action was not taken against her.  Def. Mot. at PageID.1711– 1713.  In the First Amendment context, an adverse action is one "that would deter a person of ordinary firmness from continuing to engage in that conduct."  Wurzelbacher, 675 F.3d at 583 (punctuation modified).  "Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact," but when a "plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law."  Id. at 583–584.

As previously explained, Jones's alleged adverse actions are insufficient to create a cause of action.  Jones's amended complaint alleges that the adverse actions she suffered that resulted in her First Amendment retaliation claim are "discipline and constructive discharge."  Am. Compl. ¶ 94.  As already stated, discipline, alone, without further allegations of materially adverse consequences is not a materially adverse employment action.  Davis, 854 F. App'x at 716.  Further, Jones has not established constructive discharge based on hostile work environment because she cannot established she was subjected to a hostile work environment.  Penn. State Police, 542 U.S. at 149.  Given that Plaintiff has not established an adverse employment action, the First Amendment retaliation claim must fail.  Thus, Defendants are entitled to summary judgment on this claim.

**C. Remaining State-Law Claims (Counts III-IV and VI-XIV)**

Because the Court grants Defendants' motion as to the federal law claims, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial. … the state claims should be dismissed as well.").

### III. CONCLUSION

For the reasons stated above, Jones's motion for summary judgment (Dkt. 59) is denied in full and Defendants' motion for summary judgment (Dkt. 58) is granted as to the federal law claims. Jones's remaining state-law claims are dismissed without prejudice. The case is closed. Accordingly, Jones's and Eastpointe's motions in limine are denied as moot (Dkts. 52, 61).

**SO ORDERED.**

Dated: March 31, 2026                       s/Mark A. Goldsmith
Detroit, Michigan                           MARK A. GOLDSMITH
                                            United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2026.

                                            s/Joseph Heacox
                                            JOSEPH HEACOX
                                            Case Manager

15